UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LM GENERAL INSURANCE COMPANY, LM INSURANCE CORPORATION, LIBERTY MUTUAL FIRE INSURANCE COMPANY, LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, AMERICAN STATES INSURANCE COMPANY, GENERAL INSURANCE COMPANY OF AMERICA, PEERLESS INDEMNITY INSURANCE COMPANY, SAFECO INSURANCE COMPANY OF ILLINOIS, AND WAUSAU UNDERWRITERS INSURANCE COMPANY, | C.A. No. |
| Plaintiffs, | |
| vs. | |
| ORTHOMOTION REHAB DME, INC. F/K/A ORTHOMOTION DME, LLC, MOTION AND COMPRESSION TECHNICIAN, LLC, J&S MARKETING ASSOCIATES INC. D/B/A S M GATEWAYS, SEAN MARTIN, NARESH MOOKLALL, CROWN NETWORKING GROUP LLC, JASON GOLDFARB, MASK CONSULTING GROUP INC., FLATURF CONSULTING S CORP., AND ASK FERCCI LLC, | |
| Defendants. | |

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

The plaintiffs, LM General Insurance Company, LM Insurance Corporation, Liberty Mutual Fire Insurance Company, Liberty Mutual Personal Insurance Company, American States Insurance Company, General Insurance Company of America, Peerless Indemnity Insurance Company, Safeco Insurance Company of Illinois, and Wausau Underwriters Insurance Company, (collectively, "Liberty Mutual" and/or "plaintiffs"), by their attorneys, King, Tilden, McEttrick & Brink, P.C., allege as follows:

## I.    <u>INTRODUCTION</u>

1.    This case involves a scheme to defraud executed by the durable medical equipment ("DME") company Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC ("Orthomotion") and its owner, Sean Martin ("Martin"), who conspired with its secret owner, Naresh Mooklall ("Mooklall") and his business, Motion and Compression Technician, LLC ("Motion LLC"), as well as marketing individuals and entities, including J&S Marketing Associates Inc. d/b/a S M Gateways ("J&S Marketing") (both owned by Martin), Crown Networking Group LLC ("Crown Networking") and its owner, Jason Goldfarb ("Goldfarb"), Mask Consulting Group Inc. ("Mask Consulting"), Flaturf Consulting S Corp. ("Flaturf Consulting"), and Ask Fercci LLC ("Ask Fercci") (collectively referred to as the "Defendants"), to submit fraudulent No-Fault insurance charges for the provision of unlicensed, unnecessary and medically worthless DME to Liberty Mutual claimants at excessive charges.

2.    The Defendants damaged Liberty Mutual by intentionally demanding and collecting payment on false insurance claims.

3.    Orthomotion made material misrepresentations in its licensure applications to the Department of Consumer and Worker Protection ("DCWP") to distribute DME rendering its license null and void and is therefore prohibited from seeking New York No-Fault claims because it fails to comply with state and local licensure law.

4.    Specifically, Martin, Mooklall, and Orthomotion hid that Mooklall was a 15% owner of Orthomotion.

5.    The DME Owner Defendants[1] engaged in unlawful financial arrangements pursuant to illegal kickbacks with J&S Marketing, Crown Networking, Goldfarb, Mask

---

[1] The DME Owner Defendants shall include Martin, Mooklall, and Orthomotion.

Consulting, Flaturf Consulting, Ask Fercci and other non-parties to disguise the funneling of No-Fault proceeds to "marketers."

6.     The DME Owner Defendants paid for DME referrals in violation of New York law.

7.     The DME Owner Defendants entered into illegal financial relationships with Defendants, Goldfarb (through Crown Networking), J&S Marketing, Mask Consulting, Flaturf Consulting, and Ask Fercci to facilitate the necessity of unlawful referrals to bill Liberty Mutual for unnecessary DME at excessive rates.

8.     The Defendants billed Liberty Mutual for DME devices that were dispensed pursuant to unnecessary and often invalid prescriptions in exchange for unlawful kickbacks and other financial incentives.

9.     The Defendants billed for unnecessary DME purportedly dispensed to Liberty Mutual claimants, including SAM Pro units ("SAM Pro"), cold therapy units ("CTUs"), continuous passive motion devices ("CPMs"), neck or lumbar wraps, knee wraps, shoulder wraps, and consumable patches.

10.    In furtherance of the scheme, Orthomotion falsely represented the location of service on NF-3's submitted to Liberty Mutual.

11.    Orthomotion fraudulently billed for equipment set up fees that it did not provide in violation of New York law.

12.    The Defendants submitted excessive charges for DME devices that fraudulently misrepresented the maximum reimbursement charges for these items.

13.    The Defendants' scheme was designed to exploit New York's No-Fault laws, which provide insurance coverage to persons ("claimants") involved in automobile accidents.

14.     New York is an ideal venue for this scheme because every claimant is eligible for at least $50,000.00 in coverage for medical expenses under New York's No-Fault laws.

15.     The No-Fault system allows claimants to assign their benefits to medical providers, who may then seek payment directly from the claimant's insurer.

16.     However, medical providers are not eligible to collect No-Fault payments if they fail, in any respect, to comply with applicable licensing laws.

17.     The Defendants submitted fraudulent bills to Liberty Mutual seeking No-Fault payments for DME.

18.     Orthomotion's bills are fraudulent because the DME Entity Defendants violated state and local licensure law by (1) making material misrepresentations in Orthomotion's DCWP licensure application, rendering the license null and void; (2) billing for services not rendered; (3) engaging in an unlawful referral and illegal kickback scheme; (4) billing for unnecessary DME that were medically useless; and (5) billing excessive charges for DME.

19.     The Defendants' misconduct violated applicable licensing requirements and Liberty Mutual was damaged by the fraudulent No-Fault claims submitted by the Defendants.

20.     The success of the Defendants' scheme to defraud relied on the transmission to Liberty Mutual, through the U.S. Mail, of NF-3's and other No-Fault claim documents warranting Orthomotion's eligibility to collect No-Fault payments under New York law.

21.     The Defendants knew that Orthomotion was ineligible to collect No-Fault payments, yet they still created statutory claim forms (i.e., NF-3 bills), which falsely certified Orthomotion's eligibility to collect No-Fault payments under New York law.

22.     Liberty Mutual reasonably relied on the facial validity of the records and bills mailed by Orthomotion—and the representations contained therein—when making payments on Orthomotion's No-Fault claims.

23.     All of the acts and omissions of the Defendants described throughout this Complaint were undertaken intentionally.

24.     The Defendants intentionally submitted bills to Liberty Mutual on behalf of Orthomotion knowing that none of the bills were lawfully compensable under prevailing New York law.

25.     By this Complaint, Liberty Mutual brings this action against the Defendants for: (a) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq.*; (b) common-law fraud; and (c) unjust enrichment.

26.     This action seeks actual damages of more than $959,132.79, which represent No-Fault payments that Liberty Mutual was wrongfully induced to make to Orthomotion during the course of this scheme.

27.     Liberty Mutual also seeks a declaration pursuant to 28 U.S.C. § 2201 that it is not legally obligated to make any further payments to Orthomotion in connection with No-Fault claims submitted to Liberty Mutual.

## II.     THE PARTIES

### A.     PLAINTIFFS

28.     LM General Insurance Company is duly organized and existing under the laws of the State of Illinois with its principal place of business in Boston, Massachusetts. LM General Insurance Company is authorized to conduct business in the State of New York.

29.     LM Insurance Corporation is duly organized and existing under the laws of the State of Illinois with its principal place of business in Boston, Massachusetts. LM Insurance Corporation is authorized to conduct business in the State of New York.

30.     Liberty Mutual Fire Insurance Company is duly organized and existing under the laws of the State of Wisconsin with its principal place of business in Boston, Massachusetts. Liberty Mutual Fire Insurance Company is authorized to conduct business in the State of New York.

31.     Liberty Mutual Personal Insurance Company is duly organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business in Boston, Massachusetts. Liberty Mutual Personal Insurance Company is authorized to conduct business in the State of New York.

32.     American States Insurance Company is duly organized and existing under the laws of the State of Indiana with its principal place of business in Boston, Massachusetts. American States Insurance Company is authorized to conduct business in the State of New York.

33.     General Insurance Company of America is duly organized and existing under the laws of the State of New Hampshire with its principal place of business in Boston, Massachusetts. General Insurance Company of America is authorized to conduct business in the State of New York.

34.     Peerless Indemnity Insurance Company is duly organized and existing under the laws of the State of Illinois with its principal place of business in Boston, Massachusetts. Peerless Indemnity Insurance Company is authorized to conduct business in the State of New York.

35.     Safeco Insurance Company of Illinois is duly organized and existing under the laws of the State of Illinois with its principal place of business in Boston, Massachusetts. Safeco Insurance Company of Illinoi is authorized to conduct business in the State of New York.

36.     Wausau Underwriters Insurance Company is duly organized and existing under the laws of the State of Wisconsin with its principal place of business in Boston, Massachusetts. Wausau Underwriters Insurance Company is authorized to conduct business in the State of New York.

B.     **DEFENDANTS**

1.     **Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC**

37.     Orthomotion is organized as a corporation under New York law.

38.     Orthomotion's principal place of business is located at 5 Brewster Street, Suite 113, Glen Cove, NY 11542.

39.     Orthomotion is an enterprise whose activities affect interstate commerce.

40.     Motion LLC, J&S Marketing, Martin, Mooklall, Crown Networking, Goldfarb, Mask Consulting, Flaturf Consulting, and Ask Fercci participated in the operation and management of the Orthomotion enterprise during the relevant period.

41.     Orthomotion made material misrepresentations on its DCWP licensure application regarding the true owner of Orthomotion (Mooklall).

42.     Orthomotion's bills were fraudulent because they misrepresented material facts about the licensure of Orthomotion.

43.     Orthomotion's bills were fraudulent because they contained billing for services not rendered.

44.     Orthomotion's bills misrepresented the location of the services.

45.     Orthomotion's bills were also fraudulent because the DME was not medically necessary.

46.     The DME Owner Defendants (including Orthonotion) paid illegal kickbacks for the referral of DME patients.

47.     Orthomotion violated several applicable New York licensing requirements due to the Defendants' misconduct because New York law prohibits (1) making material misrepresentations in Orthomotion's DCWP licensure application, rendering the license null and void; (2) billing for services not rendered; (3) engaging in an unlawful referral and illegal kickback scheme; (4) billing for unnecessary DME that were medically useless; and (5) billing excessive charges for DME.

48.     Accordingly, Orthomotion was never eligible to collect No-Fault payments from Liberty Mutual under N.Y. Ins. Law § 5102.

49.     Orthomotion participated in the operation and management of the Motion LLC enterprise during the relevant period and, therefore, is responsible for the fraudulent DME billed by Motion LC in connection with the claimants at issue int his Complaint.

**2.     Motion and Compression Technician, LLC**

50.     Motion LLC is a limited liability company with its principal place of business at 109-49 131st Street, South Ozone Park, NY 11420.

51.     The Ozone Park address is Mooklall's address but is also the alleged warehouse for Orthomotion.

52.     Upon information and belief, Mooklall is the sole member of Motion LLC.

53.     Motion LLC allowed Mooklall to unlawfully own, operate, and control Orthomotion, which allowed Motion LLC to participate in submitting fraudulent billing to Liberty Mutual.

54.     Motion LLC participated in the operation and management of the Orthomotion enterprise during the relevant period and, therefore, is responsible for the fraudulent DME billed by Orthomotion in connection with the claimants at issue in this Complaint.

### 3.     J&S Marketing Associates Inc. d/b/a S M Gateways

55.     J&S Marketing is a marketing company with its principal place of business at 5 Brewster Street, Unit 2, #112, Glen Cove, NY 11542

56.     Martin is the sole owner of J&S Marketing.

57.     J&S Marketing is a corporation organized and existing under and existing pursuant to New York law.

58.     J&S Marketing allowed Martin to obtain the unlawful referrals necessary for Orthomotion to submit fraudulent DME to Liberty Mutual.

59.     J&S Marketing participated in the operation and management of the Orthomotion and Motion LLC enterprises during the relevant period and, therefore, is responsible for the fraudulent DME billed by Orthomotion in connection with the claimants at issue in this Complaint.

### 4.     Sean Martin

60.     Martin resides in and is a citizen of the State of New York.

61.     Martin is the owner of Orthomotion.

62.     Martin has never possessed any healthcare license.

63.     A true and accurate statement from testimony of Martin is depicted below:

```
     Q     Do you have any medical training
or have any certifications relative to
medicine in general?
     A     No.
```

64.     Martin participated in the operation and management of the Orthomotion and Motion LLC enterprises during the relevant period, and is therefore responsible for the fraudulent DME billed by Orthomotion in connection with the claimants at issue in this Complaint.

**5.     Naresh Mooklall**

65.     Mooklall resides in and is a citizen of the State of New York.

66.     Mooklall hid his 15% ownership interest in Orthomotion.

67.     Mooklall also owned Motion LLC, which allowed him to carry out his role in the scheme.

68.     Mooklall has never possessed any healthcare license.

69.     Mooklall participated in the operation and management of the Orthomotion and Motion LLC enterprises during the relevant period, and is therefore responsible for the fraudulent DME billed by Orthomotion in connection with the claimants at issue in this Complaint.

**6.     Jason Goldfarb**

70.     Goldfarb resides in and is a citizen of the State of New York.

71.     Goldfarb is a member of Crown Networking.

72.     Goldfarb previously owned a DME entity, Kamara Supplies, Inc., where Martin worked before Orthomotion.

73.    Goldfarb was indicted for securities fraud on January 21, 2010. *See U.S. v. Goffer*, C.A. 1:10-cr-00056-RJS (S.D.N.Y.).

74.    It was alleged that Goldfarb paid for material information that was not publicly available regarding transactions and events that related to public companies and made trades based upon this information. *Id*.

75.    Goldfarb pled guilty to securities fraud and conspiracy to commit securities fraud on April 21, 2011. *Id*.

76.    Judgment was entered against Goldfarb on August 22, 2011 and Goldfarb was sentenced to 36 months imprisonment. *Id*.

77.    In connection with the guilty plea, on or around April 3, 2012, Goldfarb was disbarred as an attorney in New York. *See Matter of Goldfarb*, 96 A.D.3d 12 (N.Y. App. Div.).[2]

78.    Goldfarb profited from the unlawful DME scheme involving Orthomotion by being paid for DME referrals through illegal kickbacks.

79.    Goldfarb has never possessed any healthcare license.

80.    Goldfarb participated in the operation and management of the Orthomotion and Motion LLC enterprises during the relevant period, and is therefore responsible for the fraudulent DME billed by Orthomotion in connection with the claimants at issue in this Complaint.

**7.  Crown Networking Group LLC**

81.    Crown Networking is a limited liability company with its principal place of business at 50 Wabasso Street, Southold, NY 11971.

---

[2] On or around December 4, 2019, Goldfarb was subsequently reinstated as an attorney in New York. *See Matter of Goldfarb*, 178 A.D.3d 705 (N.Y. App. Div.).

82.     Crown Networking is owned by Goldfarb and operates from the same address as SMK Pharmacy, Corp. ("SMK Pharmacy")[3] (which is controlled by Alexander Burlak (the owner of Mask Consulting) and Mark Kassman, Simon Field, and Kim Volman—three of the owners of Flaturf Consulting).

83.     Crown Networking engaged in an illegal kickback scheme with the DME Owner Defendants to provide DME referrals in exchange for payments in violation of New York law.

84.     Crown Networking participated in the operation and management of the Orthomotion and Motion LLC enterprises during the relevant period and, therefore, is responsible for the fraudulent DME billed by Orthomotion in connection with the claimants at issue in this Complaint.

### 8.   Mask Consulting Group Inc.

85.     Mask Consulting is a corporation with its principal place of business at 87-02 Rockaway Beach Boulevard, Far Rockaway, NY 11693.

86.     Alexander Burlak ("Burlak") is the owner of Mask Consulting.

87.     Upon information and belief, Burlak has never possessed any healthcare license.

88.     Mask Consulting engaged in an illegal kickback scheme with the DME Owner Defendants to provide DME referrals in exchange for payments in violation of New York law.

89.     Mask Consulting participated in the operation and management of the Orthomotion and Motion LLC enterprises during the relevant period and, therefore, is responsible for the fraudulent DME billed by Orthomotion in connection with the claimants at issue in this Complaint.

---

[3] SMK Pharmacy was sued in *Gov't. Empls. Ins. Co. v. SMK Pharmacy Corp.*, 1:21-cv-03247-AMD-RLM (E.D.N.Y.) and *Allstate Ins. Co. v. SMK Pharmacy, Corp.*, 1:24-cv-04627-NRM-PK (E.D.N.Y.)

### 9.  **Flaturf Consulting S Corp.**

90.     Flaturf Consulting is a corporation with its principal place of business at 52 Curley Street, Long Beach, NY 11561.

91.     Burlak, Mark Kassman ("Kassman"), Simon Field ("Field"), and Kim Volman ("Volman") are the owners of Flaturf Consulting.

92.     Upon information and belief, Burlak, Kassman, Field, and Volman have never possessed any healthcare licenses.

93.     Flaturf Consulting engaged in an illegal kickback scheme with the DME Owner Defendants to provide DME referrals in exchange for payments in violation of New York law.

94.     Flaturf Consulting participated in the operation and management of the Orthomotion and Motion LLC enterprises during the relevant period and, therefore, is responsible for the fraudulent DME billed by Orthomotion in connection with the claimants at issue in this Complaint.

### 10. **Ask Fercci LLC**

95.     Ask Fercci is a corporation with its principal place of business at 555 Northeast 8th Street, Apartment 1609, Fort Lauderdale, FL 33304.

96.     Cinthia Fernanda Kaminis ("Kaminis") is the sole member of Ask Fercci.

97.     Ask Fercci engaged in an illegal kickback scheme with the DME Owner Defendants to provide DME referrals in exchange for payments in violation of New York law.

98.     Ask Fercci participated in the operation and management of the Orthomotion and Motion LLC enterprises during the relevant period and, therefore, is responsible for the fraudulent DME billed by Orthomotion in connection with the claimants at issue in this Complaint.

### III.   JURISDICTION AND VENUE

99.    Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. § 1331.

100.    Supplemental jurisdiction over the plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1367.

101.    Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) and (c) whereas the vast majority of the acts known to Liberty Mutual alleged herein were carried out within the Eastern District of New York.

102.    At all relevant times, the Defendants have engaged in purposeful activities in New York by seeking and submitting payment demands for claims made under New York's No-Fault laws.

103.    The Defendants' activities in and contacts with New York were purposefully sought and transacted to take advantage of the benefits available under New York's No-Fault laws.

104.    As the allegations and causes of action in the within Complaint arise from the Defendants' purposeful participation in New York's No-Fault system by submitting claims for payment under New York's No-Fault laws, a substantial relationship exists between the transactions at issue and Liberty Mutual's causes of action.

### IV.   APPLICABLE NO-FAULT LAWS AND LICENSING STATUTES

#### A.   NEW YORK'S NO-FAULT LAWS—GENERAL PROVISIONS

105.    Liberty Mutual underwrites automobile insurance in the State of New York.

106.    New York's No-Fault laws are designed to ensure that injured victims of motor vehicle accidents ("claimants") have an efficient mechanism to pay reasonable fees for necessary healthcare services.

107.    Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, et seq.), and the regulations promulgated pursuant thereto (11 NYCRR § 65, et seq.) (collectively, "the No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault benefits") to claimants.

108.    Under the New York No-Fault law, individuals are entitled to be compensated for "basic economic loss" resulting from injuries caused by the operation of a motor vehicle.

109.    "Basic economic loss" is defined to include "all necessary expenses" for medical services. N.Y. Ins. Law § 5102(a)(1); 11 N.Y.C.R.R. § 65-1.1.

110.    No-Fault benefits include up to $50,000.00 per Liberty Mutual claimant for reasonable expenses that are incurred for necessary healthcare goods and services.

**B.    ELIGIBILITY REQUIREMENTS UNDER NEW YORK'S NO-FAULT LAWS**

111.    Medical providers are not eligible to collect payment under New York's No-Fault laws if they fail to meet **_any_** applicable New York State or local licensing requirements necessary to perform those services in New York.  *See* 11 N.Y.C.R.R. § 65-3.16(a)(12).

112.    An insurer may withhold No-Fault payments to a medical provider when there is a willful and material failure by the provider to abide by licensing and incorporation statutes.  *State Farm Mut. Auto. Ins. Co. v. Mallela*, 827 N.E.2d 758 (N.Y. 2005); 11 N.Y.C.R.R. § 65-3.16(a)(12).

113.    Accordingly, if a professional healthcare service provider fails to meet any applicable licensing requirement necessary to perform a service, then the provider is not lawfully entitled to seek or collect No-Fault benefits under New York's No-Fault laws.

114.    As alleged herein, the Defendants failed to comply with several laws and regulations when providing healthcare services to claimants during the course of this scheme;

therefore, the Defendants are not—and never were—eligible to seek or collect No-Fault benefits from Liberty Mutual.

     **C.**    **NEW YORK CITY DME LICENSURE REQUIREMENTS**

115.    Section 20-425 of the New York City Administrative Code requires licensure of any New York City healthcare providers that dispense DME.

116.    Subchapter 25 of Title 20 of the New York City Administrative Code specifically requires DME dealers (including any business that involves selling, renting, repairing or adjusting DME) to obtain a Dealer in Products for the Disabled License from the New York City Department of Consumer and Worker Protection (hereinafter referred to as a "DCWP License").

117.    A DCWP License is required for all New York City DME dealers to lawfully provide DME to the disabled.[4]

118.    Section 20-426 of the New York City Administrative Code provides that it is "unlawful for any dealer to engage in the selling, renting, repairing, or servicing of, or making adjustments to, products for the disabled without a license."

119.    To obtain a DCWP license, a dealer must submit an application to the Commissioner of the Department of Consumer and Worker Protection that includes the identity of the applicant, the address of the DME dealer and other pertinent information concerning its officers and directors.

120.    The application contains the following fraud warning:

---

[4] ""Disabled" means a person who has a physical or mental impairment resulting from anatomical or physiological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." NYC Admin. Code §20-425.

**PENALTY FOR FALSE STATEMENTS:**

It is against the law to make a statement in this Application that you know is false. If you make a statement that you know is false, you may be punished.

Under Sections 210.45 and 175.30 of the New York Penal Law, you may be:
- fined up to $1000 and / or
- sent to jail for up to one year

Under Section 175.35 of the New York Penal Law, you may be punished if you:
- make a statement that you know is false and / or
- make the statement because you intend to mislead the Department of Consumer Affairs

Under Section 175.35 of the New York Penal Law, you may be:
- fined up to $5000 or
- fined an amount that is twice the amount of money you received by making the false statement and / or
- sent to jail for up to 4 years

The Department of Consumer Affairs may also punish you for making a false statement on this Application. These punishments may include:
- fines or penalties of up to $500 for each false statement
- permanent loss (revocation) of your license

121.    Orthomotion submitted false information in its application to the DCWP.

**D.    CLAIMING REIMBURSEMENT UNDER NEW YORK'S NO-FAULT LAWS**

122.    Claimants can assign their No-Fault benefits to third-parties.

123.    Under a duly executed assignment, a claimant's medical provider may submit claims directly to an insurance company and receive payment for necessary medical services rendered.

124.    Medical providers can submit No-Fault claims by using the claim form required by the DOI (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or more commonly as an "NF-3 form").

125.    NF-3 forms are important because they certify that the provider's request for payment is not materially false, misleading, or fraudulent. 11 N.Y.C.R.R. § 65.3-11(a); N.Y. Ins. Law § 403(d).

126.    Under New York law, medical providers must verify their NF-3 submissions subject to the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime…

N.Y. Ins. Law § 403(d).

127.    Medical providers make material misrepresentations when they submit NF-3 forms that omit or misrepresent information about the provider's eligibility for payment under New York's No-Fault laws. In addition, an NF-3 must contain truthful information about the location of the services provided. These misrepresentations can take many forms, including false or misleading information about licensure and medical necessity.

128.    Therefore, the Defendants committed fraud by misrepresenting material facts about (1) making material misrepresentations in Orthomotion's DCWP licensure application, rendering the license null and void; (2) billing for services not rendered; (3) engaging in an unlawful referral and illegal kickback scheme; (4) billing for unnecessary DME that were medically useless; and (5) billing excessive charges for DME.

## V.    FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A.    RELATED CIVIL ACTIONS

129.    Many of the Defendants and their non-party co-conspirators have been named in civil suits in connection with billing of insurers in New York.

130.    In *Gov't Empls. Ins. Co. v. Orthomotion Rehab DME, Inc.*, 1:24-cv-02330-RER-JRC (E.D.N.Y.), Geico sued Orthomotion, Martin, Mooklall, and Motion LLC, alleging that these

defendants engaged in a comprehensive scheme to defraud for billing for unlicensed DME dispensed pursuant to unlawful prescriptions for unnecessary DME at excessive charges.

131.    In *Allstate Ins. Co. v. SMK Pharmacy, Corp.*, 1:24-cv-04627-NRM-PK (E.D.N.Y.), Allstate sued SMK Pharmacy, S & K Warbasse Pharmacy Inc., Field, Volman, Kassman, and Burlak, among others, alleging that they engaged in a comprehensive scheme to defraud for billing for unnecessary and worthless topical pain products at excessive fees.

132.    In *Gov't Empls. Ins. Co. v. SMK Pharmacy Corp.*, 1:21-cv-03247-AMD-RLM (E.D.N.Y.), Geico sued SMK Pharmacy, Burlak, Kassman, Volman, and Field, alleging that they engaged in a scheme to defraud for billing for medically unnecessary prescriptions for medications at excessive and inflated charges.

133.    In *Agarunov v. Martin*, Index No. 603015/2017 (N.Y. Sup.), Russell Agarunov, Medical Records Retrieval Inc. and JR Gateways, Inc. sued Martin, Orthomotion, J&S Marketing, and SM Gateways,[5] alleging that former employee Martin, through his marketing companies, used confidential and proprietary information related to Medical Records Retrieval Inc.'s DME business in violation of New York law.

134.    Simply stated, Russell Agarunov accused Martin of stealing his referral clients that are necessary to any DME business.

135.    Martin worked as a marketer for Vista Medical Diagnostic Imaging, P.C.

136.    In *Allstate Ins. Co. v. Green, M.D.*, 1:10-cv-03986-RJD-VVP (E.D.N.Y.), Allstate sued Michael D. Green, M.D., Clifford Beinart, M.D., Vista Medical Diagnostic Imaging, P.C., Total Global Medical, P.C., Imaging Associates of Five Boroughs, L.L.C., Five County Imaging Holdings, L.L.C., and Asaf Yevdayev, alleging that Vista Medical Diagnostic Imaging, P.C. and

---

[5] SM Gateways is an assumed name of Defendant, J&S Marketing and is not a separate entity.

Total Global Medical, P.C. were owned and controlled by persons not licensed to practice medicine and that they were engaged in and illegal fee-splitting scheme with non-licensed layperson Asaf Yevdayev.

137.    The foregoing cases alleging fraud and misappropriation demonstrate that the Defendants had the motive, opportunity, intent, pre-emptive plan, and knowledge when it implemented a common scheme in this case.

### B.    VIOLATIONS OF STATE AND LOCAL LICENSURE LAW

138.    The DME Owner Defendants made material misrepresentations on Orthomotion's application to the DCWP regarding Mooklall's ownership.

139.    New York City's Administrative Code requires that DME/OD suppliers obtain DCWP Licensure. *See* NYC Admin. Code § 20-425; 6 RCNY § 2-271.

140.    A DME supplier that does not possess the DCWP Licensure is not lawfully permitted to provide supplies to patients located in New York City.

141.    The DCWP has specific penalties for misrepresentations made in the licensure application, including revocation of the license obtained by false pretenses.

142.    Liberty Mutual was induced to pay Orthomotion for unlicensed services in violation of New York law.

143.    Martin testified that when he started Orthomotion, that Mooklall maintained the same role now allegedly being performed by Motion LLC.

144.    Given that Mooklall and Motion LLC were both compensated with a 15% split of the fees charged by Orthomotion (even though Motion LLC is not billing Liberty Mutual directly), this evidences that Martin misrepresented the ownership interest(s) in Orthomotion in the relevant licensure application, as the DCWP application requires disclosure of any individuals who have

more than a 10% ownership interest. *See* NYC Admin. Code 20-426 (a. it shall be **_unlawful_** for any dealer to **_engage in the selling, renting, fitting, repairing, or servicing of, or making adjustments to,_** products for the disabled **_without a license_** therefor; b. an application for a license shall be made to the commissioner; c. any person maintaining more than one facility where such services are performed may file a single application for a license, but must pay a separate fee for each facility; d. if the business is to be carried on under a fictitious name, such name shall be stated on the application for a license) (emphasis added).

145.    All partnerships that seek to deal in products for the disabled must identify all data which is prescribed by the commissioner must be stated for each partner. *Id.* at NYC Admin. Code 20-426(d).

146.    If the dealer is a corporation, then the dealer must include all data as to each officer and director as well as the individual in charge of each place of business. *Id*.

147.    You cannot assign or transfer a DCWP licensure. *Id.* at NYC Admin. Code 20-426(e).

148.    A true and accurate copy of a licensure application to the DCWP is depicted below:

**Section 3 – Partnerships, Corporate Officers, Shareholders, Members**

You must provide information on *all* <u>business</u> general partners (*not* individual general partners), *all* corporate officers, and *each* shareholder owning 10% or more of the business applying for a license.

Note: Limited Liability Companies must provide information on *all* members. Nonprofits must provide information on *all* officers and *all* Board of Directors members.

**Attach additional sheets if necessary.**

**Individual #1 (General Partner #1, Corporate Officer #1, Shareholder #1, Member #1)**

| Last Name | Suffix *( Jr., Sr., Esq.) (optional)* | First Name | Middle Name *(optional)* |
|---|---|---|---|
| Title/Position *(Check one box only.)* | ☐ Chairman<br>☐ Director<br>☐ Officer<br>☐ Shareholder<br>☐ President<br>☐ Corporate Secretary | ☐ Treasurer<br>☐ Trustee<br>☐ Vice President<br>☐ Partner<br>☐ Member<br>☐ Other | % of Ownership |
| Home Address *(Building Number, Street Name, Apartment/Suite/Other)* | | | |
| City | State | ZIP Code | Country/Region *(if outside USA)* |

149.    The DME Owner Defendants made material misrepresentations on its application and renewal applications to the DCWP, rendering Orthomotion unlicensed.

150.    Orthomotion misrepresents that its primary business is 5 Brewster Street, Unit 113, Glen Cove, NY 11542.

151.    A true and accurate copy of Orthomotion's application identifying its address is depicted below:

22

**Business Information**

| Business Name |
|---|
| (The Business Name that you provide must be exactly as filed with the New York State Secretary of State or County Clerk.) |
| Orthomotion Rehab DME, LLC |

| Doing-Business-As (DBA)/Trade Name |
|---|
| (The DBA/Trade Name that you provide must be exactly as filed with the New York State Secretary of State or County Clerk.) |

| Premises Address *(Building Number, Street Name, Apartment/Suite/Other)* |
|---|
| 5 Brewster Street Suite 113 |

| City | State | ZIP Code | Country/Region |
|---|---|---|---|
| Glen Cove | NY | 11542 | USA |

| E-mail |
|---|
| (By providing your e-mail address, you consent to receive communications electronically from the Department of Consumer Affairs (DCA), and you affirm that the e-mail listed is a reliable form of communication for you.) |
| smgateways@gmail.com |

| Phone 1 (Primary) | Phone 2 (Alternate) | Text Telephone (TTY Phone) | Fax |
|---|---|---|---|
| (516) 423 3635 | (917) 659 2938 | | (866) 716 1044 |

152.    5 Brewster Street, Unit 113, Glen Cove, NY 11542 is a Gold Coast Mailroom.

153.    A true and accurate image of 5 Brewster Street, Unit 113, Glen Cove, NY 11542 is depicted below:



154.   Martin admitted that the 5 Brewster Street address was a mailbox to collect insurance checks.

155.   A true and accurate image of Martin's testimony is depicted below:

> Q    And the business address for
> this business is the same as Orthomotion
> Rehab D.M.E.; is that right?
>
> A    Yes.
>
> Q    What is that address?
>
> A    5 Brewster Street, Suite 113.
>
> Q    Yes.
>
> A    It's a U.P.S. store, Mail Boxes
> Etc., so not quite a P.O. Box as a
> physical location, but there's mailboxes
> there.  That's what the 113 is.

156.    Orthomotion misrepresented the owners of Orthomotion in the DCWP application.

157.    A true and accurate image of Orthomotion's misrepresentation of ownership to the
DCWP is depicted below:



158.    Martin attested to the veracity of Orthomotion's DCWP application.

159.    A true and accurate image of Martin's attestation is depicted below:



160.    Martin lied during his examination under oath provided to Liberty Mutual when he testified that he was the sole owner of Orthomotion.

161.    A true and accurate image of Martin testifying to being the sole owner of Orthomotion is depicted below:

> Q   On your application, did you
> list yourself as the sole owner?
> A   Yes.
> Q   So it's your testimony here
> today that there are no other owners of
> Orthomotion?
> A   No.
> Q   It's not your testimony, or
> there are no other owners?
> A   There are no other owners.

162.   Accordingly, Orthomotion made material misrepresentations in its DCWP application, rendering its license null and void, unlawfully dispensed DME in New York and was not eligible to submit No-Fault claims to Liberty Mutual whereas it was in violation of state and local licensure law.

### C.   ORTHOMOTION BILLED FOR SERVICES NOT RENDERED

163.   Orthomotion billed for DME services not provided in violation of New York law.

164.   Orthomotion billed for equipment set up fees that it did not provide to any Liberty Mutual claimants.

165.   A true and accurate depiction of an Orthomotion NF-3 is depicted below:

PROVIDER:
OrthoMotion Rehab DME, INC. (516)423-3635 (866)716-1044
5 Brewster Street – Suite 113
Glen Cove NY 11542

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| --- | --- | --- | --- | --- |
| 02/22/24 | 12 | CPM SHOULDER | E0936 - RR | 31.19 |
| 02/22/24 | 12 | SHEEPSKIN PAD | E0188 - NU | 19.50 |
| 02/22/24 | 12 | CTU | E0236 - NU | 325.08 |
| 02/22/24 | 12 | COLD THERAPY UNIT PAD | E0249 - NU | 34.00 |
| 02/22/24 | 12 | EQUIPMENT SET UP FEE | A9901 - NU | 109.98 |
| 02/23/24 | 12 | CPM SHOULDER | E0936 - RR | 31.19 |
| 02/24/24 | 12 | CPM SHOULDER | E0936 - RR | 31.19 |
| 02/25/24 | 12 | CPM SHOULDER | E0936 - RR | 31.19 |
| 02/26/24 | 12 | CPM SHOULDER | E0936 - RR | 31.19 |

166.    Orthomotion did not provide this service.

167.    Martin admitted that this service was provided by Mooklall and/or Motion LLC.

168.    A true and accurate copy of excerpts from Martin's testimony are contained below:

> Q      You say Naresh Mooklall is a
> technician for Orthomotion, is he a W-2
> employee or 1099?
>
> A      1099.  Corporation, actually.
>
> Q      What's the name of the
> corporation?
>
> A      Motion and Compression
> Technician.

Q       Okay.

        So you say you have a "delivery

team"; is that -- is that Naresh Mooklall?

    A       Yes.

    Q       Is that the whole delivery team?

    A       Is that -- excuse me?

    Q       Is Naresh Mooklall the delivery

team, or is there somebody else in your

employ?

    A       No, he's Motion and Compression.

    Q       When you say that someone will

have to set up the D.M.E. at the patient's

house, who would do that?

    A       Naresh Mooklall, or someone on

his team at Motion and Compression

Technician.

> Q     So would you say that Naresh
> Mooklall is responsible for -- for
> explaining the aspects and usage of the
> equipment provided to an eligible injured
> party who's been prescribed D.M.E.?

> A     Yes.

169.    Mooklall, through Motion LLC, was paid 15% of Orthomotion's receivables by direct deposit.

170.    A true and accurate copy of excerpts from Martin's testimony are contained below:

> Q     Okay.
>       Fair to say that since
> Orthomotion, in its current corporate form
> as an incorporated business, that Naresh
> Mooklall has been involved?
>     A     Yes.
>     Q     (Continuing)  As a technician
> who you paid originally?
>     A     Correct.

        Q     So Naresh Mooklall, you called
him a technician and said he's a 1099; is
that correct?
        A     Corp to Corp, actually.  But I
don't know 1099 or Corp to Corp.
        Q     How much do you pay him?
        A      It varies.  He's entitled to 15
percent of -- collected.  So it varies
from order to order.

        Q     How is Naresh Mooklall paid?
        A     He is paid by direct deposit
weekly.
        Q     So does Naresh Mooklall get
payment personally, or is it just Motion
and Compression?
        A     Motion and Compression.

        Q     Are your other employees paid
the same way, direct deposit weekly?
        A     Yes.

171.    In addition to receiving 15% of all receivables for Orthomotion, Mooklall and

Motion LLC provided warehouse space for Orthomotion.

172.    A true and accurate copy of excerpts from Martin's testimony are contained below:

```
    Q     What's the address of your
warehouse?
```

```
    A     Yeah, I don't remember the
exact, because Queens has those confusing
dashes, but it's South Ozone Park.
    Q     109-49 131st Street, South Ozone
Park, New York?
    A     Yes.
```

```
    Q     So your warehouse, 109-49 131st
```

```
Street, Ozone Park, how do you get stuff
from there to Putnam County?
    A     Sure.  Our technician has a
warehouse set up in the rear of his home,
and that is where -- it's more of a
central jumping off point for all of the
different addresses we deliver to, so we
use it as such.
```

> Q     Does Orthomotion have a lease at
> 109-49 131st Street, Ozone Park?
>
> A     No, we do not.

> Q     So all of Orthomotion's
> equipment is stored at the 109-49 131st
> Street address; is that correct?
>
> A     Yes.

173.    Pursuant to 11 N.Y.C.R.R. § 65-3.11(a), "an insurer shall pay the benefits for any element of loss other than death benefits, directly to the applicant or…upon assignment by the applicant or any of the aforementioned persons, shall pay benefits directly to providers of health care services" (which includes DME providers) as covered under section 5102(a)(2) of the Insurance Law.

174.    Moreover, 11 N.Y.C.R.R. § 65-3.11(b) states that "in order for a health care provider/hospital to receive direct payment from the insurer, the health care provider or hospital must submit to the insurer…the prescribed No-Fault Assignment of Benefits form."

175.    The DME equipment set up fees were performed (if at all) by Mooklall and/or Motion LLC, which were not the assignee provider.

176.    Motion LLC was not a licensed dealer in products for the disabled and was not eligible to bill Liberty Mutual directly.

177.    Orthomotion did not provide the billed-for services, and therefore is not entitled to reimbursement.

178.     Orthomotion fraudulently billed Liberty Mutual for equipment set up fees, which it did not provide in violation in New York law.

179.     Moreover, Orthomotion unlawfully billed for DME equipment set up fee charges that were included in the price of the DME.

180.     Pursuant to 12 N.Y.C.R.R. § 442.2(a)(1), "[t]he maximum permissible charge for the purchase of durable medical equipment, medical/surgical supplies, and orthotic and prosthetic appliances shall be the fee payable for such equipment or supplies under the Official New York Workers' Compensation Durable Medical Equipment Fee Schedule."

181.     The Fee Schedule specifies that DME delivery, set up, and dispensing are included in the applicable HCPCS Codes, meaning a DME provider (like Orthomotion) is prohibited from billing these additional services and/or fees.

182.     The DME billed by Orthomotion already included charges for DME equipment set up fees.

183.     Orthomotion unlawfully billed Liberty Mutual for add on equipment set up fees in violation of New York law.

184.     Orthomotion fraudulently billed for equipment set up fees it did not provide and was not allowed to bill.

185.     Accordingly, Orthomotion made material misrepresentations in NF-3's related to equipment set up fees, unlawfully billed for DME, and was not eligible to submit No-Fault claims to Liberty Mutual whereas it was in violation of state and local licensure law.

**D.** **ORTHOMOTION MISREPRESENTED THE LOCATION OF SERVICE ON NF-3S**

186.    NYC Admin. Code 20-430(a) requires "[a]ll work performed by a dealer shall be recorded legibly on an invoice which shall contain the license number and the exact name and business address of the person or business entity."

187.    NF-3 forms require a provider to list the service address—to fail to list the address, or to list a different address than where services actually occurred, constitutes a material false representation.

188.    Orthomotion intentionally failed to include the required service address and/or zip code on NF-3 forms submitted to Liberty Mutual.

189.    Orthomotion submitted false billing to Liberty Mutual by misrepresenting the service location.

190.    A true and accurate copy of a sample false NF-3 is depicted below:

PROVIDER:

OrthoMotion Rehab DME, INC. (516)423-3635 (866)716-1044
5 Brewster Street – Suite 113
Glen Cove NY 11542

| 15. REPORT OF SERVICES RENDERED – ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
|---|---|---|---|---|
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| 03/19/24 | 12 | CPM SHOULDER | E0936 - RR | 31.19 |
| 03/20/24 | 12 | CPM SHOULDER | E0936 - RR | 31.19 |
| | | | TOTAL CHARGES TO DATES | $ 62.38 |

191.    In nearly every NF-3 submitted (through the U.S. Mail) to Liberty Mutual, Orthomotion misrepresented the location of service.

192.    Martin admitted that the location was false.

193.    A true and accurate copy of excerpts from Martin's testimony are contained below:

```
     Q     And Motion would contact the
patient on behalf of Orthomotion?
     A     Yes.
```

```
          Can you tell me where the place
of service for this patient was, based on
this record?
     A     No, I cannot.
     Q     What does it say on the record?
     A     (No response.)
     Q     It's in the second column under
place of service, including ZIP code.
     A     Oh, I'm not familiar with that.
     Q     Okay.
          ATTORNEY MOROFF:  He's just
     asking what it says.
     A     Oh; 12, it says 12.
     Q     Do you understand why the number
"12" is placed there?
     A     I do not.
```

```
     Q     So now that we've looked at all
the exhibits, would you agree that the
place of service on all of your bills says
-- for at least -- at least that are
subject to this E.U.O., say 12?
     A     For the batch and everything
```

> that you've just shown me, yes.

194.    Upon information and belief, the Defendants intentionally misrepresented the location to hide Mooklall and Motion LLC's involvement and share in the profits of Orthomotion.

195.    Motion LLC does not possess a DCWP license and it is prohibited from billing Liberty Mutual for DME services.

196.    The NF-3 contains the following fraud warning:

> ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR COMMERCIAL INSURANCE OR A STATEMENT OF CLAIM FOR ANY COMMERCIAL OR PERSONAL INSURANCE BENEFITS CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, AND ANY PERSON WHO, IN CONNECTION WITH SUCH APPLICATION OR CLAIM, KNOWINGLY MAKES OR KNOWINGLY ASSISTS, ABETS, SOLICITS OR CONSPIRES WITH ANOTHER TO MAKE A FALSE REPORT OF THE THEFT, DESTRUCTION, DAMAGE OR CONVERSION OF ANY MOTOR VEHICLE TO A LAW ENFORCEMENT AGENCY, THE DEPARTMENT OF MOTOR VEHICLES OR AN INSURANCE COMPANY, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE VALUE OF THE SUBJECT MOTOR VEHICLE OR STATED CLAIM FOR EACH VIOLATION.

197.    Orthomotion fraudulently billed Liberty Mutual by making material misrepresentations on NF-3s submitted to Liberty Mutual regarding the location of service.

198.    Accordingly, Orthomotion made material misrepresentations in NF-3s related to location, unlawfully billed for DME, and was not eligible to submit No-Fault claims to Liberty Mutual whereas it was in violation of state and local licensure law.

**E.    UNLAWFUL DME REFERRALS**

199.    The Defendants engaged in an unlawful referral/kickback scheme to obtain the necessary referrals needed to dispense DME and bill Liberty Mutual.

200.    The Defendants executed an illegal kickback scheme with several "marketing" companies, including defendants Crown Networking, Mask Consulting, Flaturf Consulting, and Ask Fercci and their owners (collectively, "Defendant Marketing Companies").

201.    The Defendant Marketing Companies did not provide marketing services to Orthomotion.

202.    Instead, the Defendant Marketing Companies made referrals to Orthomotion in exchange for payment.

203.    A true and accurate copy of excerpts from Martin's testimony are contained below:

```
     Q      For the marketers that you're
paying $5,000 a month, about how many
pieces of D.M.E. or doctors would be
involved in that charge?
     A      Anywhere between --
     Q      I can ask --
     A      Go ahead.
     Q      I was just going to say --
            [Indiscernible simultaneous
     talking.]
     A      Anywhere between five and a
dozen.
```

```
     Q      Is that equipment or doctors?
     A      Accounts -- doctors.
```

> Q      So if they bring in a doctor --
> right -- and that doctor starts using
> Orthomotion, and you have five to twelve
> of those, and they continue to use
> Orthomotion, you'll pay them $5,000 a
> month as a fee?
>
> A      Correct.

204.    Indeed, the unlawful referrals came directly from the marketers and not referring physicians.

205.    A true and accurate copy of excerpts from Martin's testimony are contained below:

> Back to the prescriptions, would
> the prescription come from the doctor
> directly or from a contractor, like
> somebody that was on your marketing team?

```
    A     No, it would come from the
doctor's office.

    Q     So after these marketers bring
in the doctors, you communicate --

    A     Oh, if -- I have an addendum to
my answer.

          Yes, if it's coming from a
marketer, then it would come from them.
They would procure the prescriptions, the
needed documentation, and they'll refer it
over to us.
```

206.    Upon information and belief, there are no healthcare professionals employed by the Defendant Marketing Companies.

207.    The Defendant Marketing Companies selected physicians to write unnecessary referrals to Orthomotion.

208.    Crown is owned by Defendant Goldfarb and operates from 50 Wabasso Street, Southold, NY 11971.

209.    Goldfarb does not possess any healthcare license.

210.    During substantial portions of the relevant time period, the DME Owner Defendants paid $5,000.00 per month to Crown Networking for the unlawful referral of DME prescriptions.

211.    Martin admitted paying money to Crown Networking for the referral of DME.

212.    A true and accurate copy of an excerpt of Martin's testimony is contained below:

```
Q      Crown?

A      I'm going to say approximately
$5,000 as well, although I do not recall
the exact number.   Monthly.

Q      Per month; right?

A      Correct.
```

213.    Mask Consulting is owned by Burlak and operates from 87-02 Rockaway Beach Boulevard, Far Rockaway, NY 11693.

214.    Upon information and belief, Burlak does not possess any healthcare license.

215.    During substantial portions of the relevant time period, the DME Owner Defendants paid in excess of $5,000.00 per month to Mask Consulting for the unlawful referral of DME prescriptions.

216.    Martin admitted paying money to Mask Consulting for the referral of DME.

217.    A true and accurate copy of excerpts of Martin's testimony is contained below:

```
        Mask and Flat Earth, how much
would you pay them when they were doing
work for you?  Was it about $5,000 a
month?
    A    I don't recall, but it was
higher than that.
    Q    Higher than $5,000 a month?
    A    Yes.
    Q    Was that typical that it was
more than $5,000 a month?
```

```
    A    Yes.
```

218.    Flaturf Consulting is owned by Burlak, Kassman, Field, and Volman and operates from 52 Curley Street, Long Beach, NY 11561.

219.    Upon information and belief, Burlak does not possess any healthcare license.

220.    Upon information and belief, Kassman does not possess any healthcare license.

221.    Upon information and belief, Field does not possess any healthcare license.

222.    Upon information and belief, Volman does not possess any healthcare license.

223.    The owners of Flaturf Consulting also co-own SMK Pharmacy and NF Med Supplies Corp.

224.    During substantial portions of the relevant time period, the DME Owner Defendants paid in excess of $5,000.00 per month to Flaturf Consulting for the unlawful referral of DME prescriptions.

225.  Martin admitted paying money to Flaturf Consulting for the referral of DME.

226.  A true and accurate copy of excerpts of Martin's testimony is contained below:

> Mask and Flat Earth, how much
> would you pay them when they were doing
> work for you?  Was it about $5,000 a
> month?
>      A    I don't recall, but it was
> higher than that.
>      Q    Higher than $5,000 a month?
>      A    Yes.
>      Q    Was that typical that it was
> more than $5,000 a month?

> A    Yes.

227.  Ask Fercci is owned by Kaminis and does not appear to have any ties to the State of New York.

228.  Upon information and belief, Kaminis does not possess any healthcare license.

229.  During substantial portions of the relevant time period, the DME Owner Defendants paid $5,000.00 per month to Ask Fercci for the unlawful referral of DME prescriptions.

230.  Martin admitted paying money to Ask Fercci for the referral of DME.

231.  A true and accurate copy of an excerpt of Martin's testimony is contained below:

```
     Q       Do you recall how much you paid
Mask most recently?
     A       I do not.
     Q       Ask Ferci?
     A       I'm going to say $5,000 per
month.
     Q       The last payment, or is it
approximately $5,000 per month?
     A       I would say approximately.
```

232.    The payment for the referral of DME violates New York law. *See, e.g.*, N.Y. Educ. Law §§ 6509-a, 6530(18), 6531; 8 N.Y.C.R.R. § 29.1(b)(3).

233.    Moreover, it is clear that the Defendant are engaged in an illegal kickback scheme to generate the patient referrals necessary to perpetrate their fraud scheme.

234.    The Defendants engaged in unlawful referrals and illegal kickbacks in violation of New York law.

235.    Accordingly, Orthomotion unlawfully dispensed DME and was not eligible to submit No-Fault claims to Liberty Mutual whereas it was not in compliance with state and local licensure laws.

**F.    ORTHOMOTION BILLED FOR UNNECESSARY DME**

236.    The DME allegedly dispensed to Liberty Mutual claimants by Orthomotion at the direction of the Defendants that were based on unlawful referrals constitutes fraudulent billing.

237.    Accordingly, Orthomotion unlawfully dispensed unnecessary DME and was not

eligible to submit No-Fault claims to Liberty Mutual whereas Orthomotion was not in compliance with state or local licensure laws.

238.    Orthomotion billed Liberty Mutual for unnecessary DME at excessive rates.

239.    Eligible patients can collect No-Fault payments to cover their "basic economic loss," which includes lost wages and necessary medical expenses up to $50,000.00. *See* N.Y. Ins. Law § 5102.

240.    As an assignee of the patients, Orthomotion was only entitled to collect No-Fault payments for services that are medically necessary and related to an automobile accident.

241.    The American Medical Association defines medical necessity as: "Healthcare services or products that a prudent physician would provide to a patient for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptoms in a manner that is (a) in accordance, with generally accepted standards of medical practice; (b) clinically appropriate in terms of type, frequency, extent, site, and duration; and (c) not primarily for the economic benefit of the health plans and purchasers or for the convenience of the patient, treating physician, or other health care provider" (Institute of Medicine, Committee on Defining and Revising and Essential Health Benefits Package for Qualified Health Plans (2011)).

242.    Healthcare providers are ineligible to collect No-Fault payments for medically unnecessary services.

243.    Orthomotion violated applicable licensing requirements by billing for medically unnecessary services.

244.    Liberty Mutual claimants were provided unnecessary DME.

245.    The Defendants' goal was to bill as much as possible, regardless of whether the DME was reasonably necessary to patients' care, recovery, or rehabilitation in order to generate

bills for submission to Liberty Mutual.

246.     The DME purportedly dispensed to Liberty Mutual claimants by Orthomotion was provided pursuant to a pre-determined protocol that was not based on an independent evaluation of the individual's injury, age, comorbidities, or other factors required to establish medical necessity.

247.     Generally—prior to prescribing DME to a patient, a healthcare provider must evaluate whether (1) DME directly relates to the individual symptoms; (2) the DME is likely to help improve the patient's complained-of condition; (3) the patient will use the DME; and (4) the DME could have any negative effects based upon the patient's physical condition and medical history.

248.     According to the documentation submitted to Liberty Mutual, the referring physicians never asked their patients if they were using the DME or if there were any impediments to the use of the DME.

249.     Orthomotion submitted bills to Liberty Mutual for sustained acoustic medicine devices ("SAM Pro units") pursuant to CPT Code E1399 for $63.00.

250.     A true and accurate depiction of an Orthomotion bill for a SAM Pro unit is depicted below:

| 15. REPORT OF SERVICES RENDERED – ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
|---|---|---|---|---|
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| 11/09/21 | 960 Osbom street Apt 1R, Brooklyn NY, 11212 | SAM UNIT NF | E1399 - RR | 63.00 |
| 11/10/21 | 850 Osbom street Apt 1R, Brooklyn NY, 11212 | SAM UNIT NF | E1399 - RR | 63.00 |
| | | | TOTAL CHARGES TO DATES | $ 126.00 |

| 16. IF TREATING PROVIDER IS DIFFERENT THAN BILLING PROVIDER COMPLETE THE FOLLOWING: | | | | | |
|---|---|---|---|---|---|
| TREATING PROVIDER'S NAME | TITLE | LICENSE OR CERTIFICATION NO. | | BUSINESS RELATIONSHIP CHECK APPLICABLE BOX | |
| ORTHOMOTION REHAB, INC | | 2052162-DCA | EMPLOYEE | INDEPENDENT CONTRACTOR | OTHER (SPECIFY) |

251.     SAM Pro units are a low intensity, long duration, portable ultrasound therapy unit that reduces the pain associated with tendon, ligament, or muscle injuries by using ultrasound waves.

252.     Specifically, Orthomotion's SAM Pro unit home use, low intensity ultrasound unit has not been proven effective for treating the injuries sustained by Liberty Mutual claimants.

253.     The Defendants primarily dispensed SAM Pro units because these devices have no assigned CPT Code (and therefore no specific fee), which allowed the Defendants to utilize the miscellaneous HCPCS code E1399 when billing Liberty Mutual.

254.     The Defendants' SAM Pro unit is a purported battery-powered, wearable low intensity ultrasound device for home use.

255.     By focusing on dispensing SAM Pro units, the Defendants maximized the amount of No-Fault benefits that they could extract from insurance companies, including Liberty Mutual.

256.     By submitting NF-3's (or HICF-1500 forms), Orthomotion represented that:

(i)      They received a legitimate prescription for medically necessary DME;
(ii)     The prescription is not based on any unlawful financial arrangement;
(iii)    The DME was provided to the patient; and
(iv)     The fee charged was not in excess of the price contained in the applicable fee schedule.

257.     Orthomotion's billing to Liberty Mutual for SAM Pro units were not medically necessary whereas the SAM Pro units to Liberty Mutual were purportedly dispensed pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants.

258.     Orthomotion fraudulently billed Liberty Mutual for unnecessary SAM Pro units.

259.     Orthomotion also submitted inflated charges for Continuous Passive Motion devices ("CPM") and Cold Therapy units ("CTU") that were false because the devices were not medically necessary.

260.    CPM devices have no proven efficacy.

261.    There is no evidence that CPM devices are any more useful than standard post-operative physical therapy.

262.    Orthomotion submitted bills to Liberty Mutual for CPMs pursuant to CPT Code E0936 ("CPT Code E0936") for $92.00 and $31.19.

263.    A true and accurate depiction of an Orthomotion bill for CPM is depicted below:

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
|---|---|---|---|---|
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| 08/03/21 | 662 Central Park Ave 1st Floor  Yonkers NY, 10704 | CPM SHOULDER | E0936 - RR | 92.00 |
| 08/03/21 | 662 Central Park Ave 1st Floor  Yonkers NY, 10704 | VASCUTHERM | E1399 - RR | 80.00 |
| | | | TOTAL CHARGES TO DATES | $ 172.00 |

| 16. IF TREATING PROVIDER IS DIFFERENT THAN BILLING PROVIDER COMPLETE THE FOLLOWING: | | | | | |
|---|---|---|---|---|---|
| TREATING PROVIDER'S NAME | TITLE | LICENSE OR CERTIFICATION NO. | BUSINESS RELATIONSHIP CHECK APPLICABLE BOX | | |
| | | | EMPLOYEE | INDEPENDENT CONTRACTOR | OTHER (SPECIFY) |
| ORTHOMOTION REHAB, INC | | 2052162-DCA | | ☐ | |

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
|---|---|---|---|---|
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| 01/25/23 | 12 | CPM SHOULDER | E0936 - RR | 31.19 |
| 01/25/23 | 12 | SHEEPSKIN PAD | E0168 - NU | 19.50 |
| 01/25/23 | 12 | VASCUTHERM | E1399 - RR | 80.00 |
| 01/25/23 | 12 | VASCUTHERM SHOULDER WRAP | E0655 - NU | 56.04 |
| 01/26/23 | 12 | CPM SHOULDER | E0936 - RR | 31.19 |
| 01/26/23 | 12 | VASCUTHERM | E1399 - RR | 80.00 |
| 01/27/23 | 12 | CPM SHOULDER | E0936 - RR | 31.19 |
| 01/27/23 | 12 | VASCUTHERM | E1399 - RR | 80.00 |
| 01/28/23 | 12 | CPM SHOULDER | E0936 - RR | 31.19 |
| 01/28/23 | 12 | VASCUTHERM | E1399 - RR | 80.00 |
| 01/29/23 | 12 | CPM SHOULDER | E0936 - RR | 31.19 |
| 01/29/23 | 12 | VASCUTHERM | E1399 - RR | 80.00 |
| 01/30/23 | 12 | CPM SHOULDER | E0936 - RR | 31.19 |
| 01/30/23 | 12 | VASCUTHERM | E1399 - RR | 80.00 |

264. Orthomotion also submitted bills to Liberty Mutual for CPMs pursuant to CPT Code E0935 ("CPT Code E0935") for $90.00, $24.92, and $18.88.

265. A true and accurate depiction of an Orthomotion bill for CPM is depicted below:

| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
|---|---|---|---|---|
| 08/03/21 | 1558 Glover Street 1st Floor Bronx NY, 10462 | CPM KNEE | E0935 - RR | 90.00 |
| 08/03/21 | 1558 Glover Street 1st Floor Bronx NY, 10462 | VASCUTHERM | E1399 - RR | 80.00 |
| | | | TOTAL CHARGES TO DATES | $ 170.00 |

16. IF TREATING PROVIDER IS DIFFERENT THAN BILLING PROVIDER COMPLETE THE FOLLOWING:

| TREATING PROVIDER'S NAME | TITLE | LICENSE OR CERTIFICATION NO. | BUSINESS RELATIONSHIP CHECK APPLICABLE BOX | | |
|---|---|---|---|---|---|
| | | | EMPLOYEE | INDEPENDENT CONTRACTOR | OTHER (SPECIFY) |
| ORTHOMOTION REHAB, INC | | 2052162-DCA | | ☐ | |

**15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY**

| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
|---|---|---|---|---|
| 06/30/22 | 12 | NJ CPM KNEE | E0935 - RR | 24.92 |
| 06/30/22 | 12 | VASCUTHERM | E1399 - RR | 80.00 |
| 07/01/22 | 12 | NJ CPM KNEE | E0935 - RR | 24.92 |
| 07/01/22 | 12 | VASCUTHERM | E1399 - RR | 80.00 |
| 07/02/22 | 12 | NJ CPM KNEE | E0935 - RR | 24.92 |
| 07/02/22 | 12 | VASCUTHERM | E1399 - RR | 80.00 |
| 07/03/22 | 12 | NJ CPM KNEE | E0935 - RR | 24.92 |
| 07/03/22 | 12 | VASCUTHERM | E1399 - RR | 80.00 |
| 07/04/22 | 12 | NJ CPM KNEE | E0935 - RR | 24.92 |
| 07/04/22 | 12 | VASCUTHERM | E1399 - RR | 80.00 |

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| --- | --- | --- | --- | --- |
| 01/24/23 | 12 | CPM KNEE | E0935 - RR | 18.88 |
| 01/25/23 | 12 | CPM KNEE | E0935 - RR | 18.88 |
| 01/26/23 | 12 | CPM KNEE | E0935 - RR | 18.88 |
| 01/27/23 | 12 | CPM KNEE | E0935 - RR | 18.88 |
| 01/28/23 | 12 | CPM KNEE | E0935 - RR | 18.88 |
| 01/29/23 | 12 | CPM KNEE | E0935 - RR | 18.88 |
| 01/30/23 | 12 | CPM KNEE | E0935 - RR | 18.88 |

266.    Orthomotion submitted bills to Liberty Mutual for CTU devices pursuant to CPT Code E0236 ("CPT Code E0236") for $325.08.

267.    A true and accurate depiction of an Orthomotion bill for CTU is depicted below:

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT OR HEALTH SERVICE RENDERED | FEE SCHEDULE TREATMENT CODE | CHARGES |
| --- | --- | --- | --- | --- |
| 03/01/24 | 12 | CTU | E0236 - NU | 325.08 |
| 03/01/24 | 12 | ORTHOPEDIC POSITIONING SEAT | T5001 - NU | 756.03 |
| 03/01/24 | 12 | TRANSCUTANEOUS ELECTRICAL JOINT STIMULATION DEVICE SYSTEM (SALE) | E0762 - NU | 808.25 |
| | | | TOTAL CHARGES TO DATE | $ 1889.36 |

| 16. IF TREATING PROVIDER IS DIFFERENT THAN BILLING PROVIDER COMPLETE THE FOLLOWING: | | | | | |
| TREATING PROVIDER'S NAME | TITLE | LICENSE OR CERTIFICATION NO. | BUSINESS RELATIONSHIP CHECK APPLICABLE BOX | | |
| --- | --- | --- | --- | --- | --- |
| | | | EMPLOYEE | INDEPENDENT CONTRACTOR | OTHER (SPECIFY) |
| ORTHOMOTION REHAB, INC | | 2052162-DCA | ✓ | ☐ | |

268.    Orthomotion's representations about the necessity and effectiveness of the CPM and CTU devices are false because the effectiveness of such devices in recovery from minor motor vehicle accidents has never been proven.

50

269.     The CTU devices are also unnecessary.

270.     Orthomotion owned the CTUs and rented their devices to patients pursuant to a "Patient Sales Agreement."

271.     A true and accurate depiction of an Orthomotion Patient Agreement is depicted below:



272.     Under New York's No-Fault laws, this arrangement allowed the Defendants to bill Liberty Mutual for each day the device was rented.

273.     Instead of these expensive devices, the referring providers' patients could have received the same or better results by using regular ice packs, which are available at a fraction of the price charged to Liberty Mutual by Orthomotion for the CTU devices.

274.     None of the billing for CTU devices were necessary.

275.     Healthcare providers are ineligible to collect No-Fault payments for medically unnecessary services.

276.     Orthomotion violated applicable licensing requirements by billing for medically unnecessary services.

277.     Orthomotion utilized blank pre-signed prescription forms executed by the referring physicians.

278.     Notably, the referring physicians' signatures appeared altered on many of the DME prescription forms.

279.     A true and accurate excerpt from Martin's testimony is depicted below:

```
              So Dr. Gramse, is that your
    client?
         A     Yes.
         Q     It says TENS unit with lead with
    electrodes; do you see that?
         A     Yes.
         Q     Do you see that, per pair?
         A     Yes.
         Q     Do you see Dr. Gramse's
    signature here?
         A     I do.
         Q     How would you describe it?
         A     Pretty nondescript.
         Q     Can I ask you, does it look like
```

-- is it fair to categorize this as a
squiggly line?

    A    It's scribbled, for sure.

    Q    This is a bill for D███ M████
for Broadway chiropractic heal from Dr.
Gramse.

    A    Okay.

    Q    This is the signature on that
bill (indicating).  Does that look
anything like the signature that was on
the previous page?

    A    No, that does not.


        Now, signature from Dr. Gramse
the same day is completely different.
What did your -- well, what could your
staff have done to verify that signature
or the information?

    A    My staff does not verify
signatures.  We receive prescriptions and
we process them.

> Q     Is it fair to say that if I show
> you any other medical doctors' signatures
> that don't match, you're going to testify
> that you don't know anything about it?
>
> A     Correct.

280.    The documentation submitted to Liberty Mutual fails to provide any medical justification of why the specific DME was being dispensed to Liberty Mutual claimants.

281.    Medical providers are ineligible to collect No-Fault payments for medically unnecessary services.

282.    Accordingly, Orthomotion fraudulently billed for unnecessary DME, unlawfully billed for DME, and has no basis to submit No-Fault claims to Liberty Mutual whereas it was in violation of state and local licensure law.

## VI.    SPECIFIC ALLEGATIONS OF MAIL FRAUD RACKETEERING ACTIVITY

283.    The Defendants created, prepared, and submitted (or caused to be created, prepared, and submitted) false medical documentation and intentionally violated the laws of the United States by devising, and intending to devise, schemes to defraud and obtain money and property by means of false and fraudulent pretenses in representations, and by placing, or causing to be placed, in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Service, in violation of 18 U.S.C. § 1341 (mail fraud) for the purpose of executing, or attempting, such fraudulent schemes.

284.    Unless otherwise pled to the contrary, all documents, notes, reports, health insurance claim forms, medical diagnoses, referrals, prescriptions, letters of medical necessity,

delivery receipts, wholesale invoices, and NF-3's in connection with the insurance claims referenced throughout this pleading traveled through the U.S. Mail.

285. Every insurance claim detailed within involved at least two uses of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, claims settlement checks and the return of the cancelled settlement drafts to the financial institution(s) from which the draft(s) were drawn, as well as return of settlement draft duplicates to the insurance carrier's home office for filing.

286. The Defendants used the U.S. Mail to further their fraudulent scheme and conduct the affairs of the Orthomotion and Motion LLC enterprises; they caused prescriptions, delivery receipts, medical records, and NF-3 bills from Orthomotion to be mailed to Liberty Mutual and/or counsel for claimants, and/or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

287. The Defendants and/or persons working under their direction or control caused Orthomotion to falsely certify that it was, in all respects, eligible to collect No-Fault payments each time that they mailed a demand for payment (i.e., NF-3 bill or other invoice) to Liberty Mutual.

288. The Defendants committed mail fraud because they used the U.S. Mail to submit No-Fault claims even though Orthomotion was not entitled to No-Fault payments.

289. At all relevant times, the Defendants knew that claimants, insurance carriers, claimants' attorneys, other medical providers, and/or Liberty Mutual would use the U.S. Mail in connection with each of Orthomotion's fraudulent No-Fault claims, including issuing payments in reliance on the documents mailed by the DME Entity Defendants support of the claims.

290.     Liberty Mutual estimates that the Defendants' scheme generated hundreds of mailings.  A representative sampling of mailings made in furtherance of the Orthomotion and Motion LLC enterprises are listed in the chart annexed at Exhibit 1 and incorporated herein by reference as if set forth in its entirety.

## VII.   SPECIFIC ALLEGATIONS OF FRAUDULENT CONCEALMENT AND MISREPRESENTATIONS MADE TO AND RELIED UPON BY LIBERTY MUTUAL

291.     Orthomotion falsely represented that it was in compliance with state and local licensure law each time it submitted a claim to Liberty Mutual.

292.     Each NF-3 submitted by Orthomotion falsely attested to the medical necessity of the DME devices.

293.     At all times relevant during the operation of Orthomotion, to induce Liberty Mutual to pay promptly charges for DME purportedly provided to claimants by Orthomotion, the Defendants caused Orthomotion to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault laws.

294.     Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services or products that were provided in accord with all applicable New York state licensing requirements.

295.     The Defendants made the following misrepresentations: (1) making material misrepresentations in Orthomotion's DCWP licensure application, rendering the license null and void; (2) billing for services not rendered; (3) engaging in an unlawful referral and illegal kickback scheme; (4) billing for unnecessary DME that was medically useless; and (5) billing excessive charges for DME.

296.     The truth about Orthomotion's ownership is not readily evident within the four corners of the documents submitted to Liberty Mutual by the Defendants and upon which Liberty Mutual relied in adjusting the claims and tendering payment in connection with each discrete patient claim at issue in this matter.

297.     The Defendants intentionally made misrepresentations in the NF-3s submitted to Liberty Mutual to conceal Mooklall's ownership and share of Orthomotion's profits.

298.     Mooklall and Motion LLC could not bill Liberty Mutual for DME services because Motion LLC does not possess the requisite DCWP license.

299.     Thus, every time the Defendants (along with those individuals working under their control) caused Orthomotion to submit No-Fault claims to Liberty Mutual, the Defendants (and those individuals working under their control) necessarily certified that Orthomotion was, in all respects, eligible to be reimbursed under New York's No-Fault laws.

300.     The Defendants submitted numerous documents in furtherance of its efforts to conceal their fraud, including prescriptions, delivery receipts, wholesale invoices, and NF-3's.

301.     Martin, on behalf of Orthomotion, made material misrepresentations in his examination under oath to fraudulently conceal the fraud scheme.

302.     The full extent of the Defendants' misconduct was not, and could not have been, known to Liberty Mutual until it commenced this action.

## VIII.   <u>LIBERTY MUTUAL'S JUSTIFIABLE RELIANCE</u>

303.     Each claim submitted to Liberty Mutual by (or on behalf of) the Defendants was verified pursuant to Insurance Law § 403.

304.     To induce Liberty Mutual to promptly pay Orthomotion, the Defendants submitted NF-3 forms certifying that Orthomotion was eligible to be reimbursed and in compliance with state

and local licensure law.

305.   Further, to induce Liberty Mutual to promptly pay the fraudulent charges for DME purportedly provided to Liberty Mutual claimants, the Defendants hired attorneys and law firms to pursue collection of the fraudulent charges from Liberty Mutual. These attorneys and law firms routinely file time-consuming and expensive lawsuits and arbitration matters against Liberty Mutual in the event that Orthomotion's charges are not promptly paid in full.

306.   Liberty Mutual is under statutory and contractual obligations to promptly and fairly process claims within thirty (30) days.  The facially valid documents submitted to Liberty Mutual by the Defendants in support of the fraudulent charges, combined with the material misrepresentations described above, were designed to, and did, cause Liberty Mutual to justifiably rely on them.

307.   The Defendants concealed from Liberty Mutual the truth regarding Orthomotion's reimbursement eligibility.

308.   In reasonable reliance on these misrepresentations, Liberty Mutual paid money to Orthomotion to its detriment.

309.   Liberty Mutual would not have paid these monies had the Defendants provided true and accurate information about Orthomotion's reimbursement eligibility, including billing for (1) making material misrepresentations in Orthomotion's DCWP licensure application, rendering the license null and void; (2) billing for services not rendered; (3) engaging in an unlawful referral and illegal kickback scheme;  (4) billing for unnecessary DME that were medically useless; and (5) billing excessive charges for DME.

310.   As a result, Liberty Mutual was caused to make No-Fault payments totaling over $959,132.79 to the DME Entity Defendants. *See* Exhibit 2.

311.   Liberty Mutual made payments to the Defendants in reasonable reliance on the documents and representations submitted by the Defendants in support of their No-Fault claims, including the (false) warranties that Orthomotion was eligible for payment under New York's No-Fault laws.

## IX.   DAMAGES

312.   The Defendants' pattern of fraudulent conduct injured Liberty Mutual in its business and property by reason of the aforesaid violations of state and federal law. Although it is not necessary for Liberty Mutual to calculate damages with specificity at this stage in the litigation (whereas Liberty Mutual's damages continue to accrue), Liberty Mutual's injury includes, but is not limited to, compensatory damages for payments made to Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC in excess of $959,132.79, the exact amount to be determined at trial. The chart annexed at Exhibit 2, and incorporated herein as if set forth in its entirety, identifies Liberty Mutual's payments to Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC in connection with No-Fault benefit claims determined to be fraudulent as of the filing of this Complaint.

## X.   CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### ORTHOMOTION REHAB DME, INC. F/K/A ORTHOMOTION DME, LLC ENTERPRISE
**(Against Sean Martin, Naresh Mooklall, Motion and Compression Technician, LLC, J&S Marketing Associates Inc. d/b/a S M Gateways, Crown Networking Group LLC, Jason Goldfarb, Mask Consulting Group Inc., Flaturf Consulting S Corp., and Ask Fercci LLC)**

313.   Liberty Mutual re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-312 as if set forth fully herein.

314.   In furtherance of their operation and management of Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC ("Orthomotion"), Defendants, Sean Martin, Naresh Mooklall,

Motion and Compression Technician, LLC, J&S Marketing Associates Inc. d/b/a S M Gateways, Crown Networking Group LLC, Jason Goldfarb, Mask Consulting Group Inc., Flaturf Consulting S Corp., and Ask Fercci LLC (collectively, "Count I Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Liberty Mutual insurance claims in furtherance of their scheme to defraud.

315.    The Count I Defendants employed two or more mailings to demand and/or receive payment from Liberty Mutual on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

316.    Among other things, NF-3 forms, prescriptions, delivery receipts, wholesale invoices, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Liberty Mutual through the U.S. Mail.

317.    Policies of insurance were delivered to insureds through the U.S. Mail.

318.    Payments made by Liberty Mutual to Orthomotion were delivered through the U.S. Mail.

319.    As documented above, the Count I Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms to Liberty Mutual related to services that were purportedly performed by Orthomotion for the purpose of collecting payment from Liberty Mutual under the Personal Injury Protection benefits portion of the Liberty Mutual policies and applicable New York No-Fault laws.

320.    As a result of, and in reasonable reliance upon, the mailing of these materially false representations, Liberty Mutual, by its agents and employees, issued drafts to Orthomotion, for the benefit of one or more of the Count I Defendants, that would not otherwise have been paid.

321.    The Count I Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents, each appearing legitimate on their face, also prevented Liberty Mutual from discovering this scheme for a long period of time, thus enabling the Count I Defendants to continue without being detected.

322.    The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

323.    By creating and then mailing to Liberty Mutual (or directing the creation and subsequent mailing to Liberty Mutual) of numerous fraudulent documents in an ongoing scheme, the Count I Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

324.    The activities alleged in this case had the direct effect of causing funds to be transferred from Liberty Mutual to Orthomotion for the benefit of the Count I Defendants.

325.    Liberty Mutual is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Liberty Mutual's overall financial well-being and adversely affect insurance rates.

326.    Orthomotion constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

327.    The Count I Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of the Orthomotion enterprise through a pattern of racketeering activities.

328.    Liberty Mutual is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count I Defendants' conduct.

329.    The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

330.    By virtue of the Count I Defendants' violations of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT II
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### ORTHOMOTION REHAB DME, INC. F/K/A ORTHOMOTION DME, LLC ENTERPRISE
**(Against Sean Martin, Naresh Mooklall, Motion and Compression Technician, LLC, J&S Marketing Associates Inc. d/b/a S M Gateways, Crown Networking Group LLC, Jason Goldfarb, Mask Consulting Group Inc., Flaturf Consulting S Corp., and Ask Fercci LLC)**

331.    Liberty Mutual re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-312 as if set forth fully herein.

332.    Throughout their participation in the operation and management of Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC ("Orthomotion"), Defendants, Sean Martin, Naresh Mooklall, Motion and Compression Technician, LLC, J&S Marketing Associates Inc. d/b/a S M Gateways, Crown Networking Group LLC, Jason Goldfarb, Mask Consulting Group Inc., Flaturf Consulting S Corp., and Ask Fercci LLC (collectively, "Count II Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

333.    The Count II Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Orthomotion by means of a pattern of racketeering activity, namely using the U.S. Mail to send fraudulent NF-3 bills and other claim-related documents to Liberty Mutual in connection with No-Fault claims, including, without limitation, the numerous instances of mail fraud set forth in Exhibit 1.

334.    The purpose of the conspiracy was to obtain No-Fault benefit payments from Liberty Mutual on behalf of Orthomotion, even though Orthomotion, as a result of the Count II Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments. The Count II Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations.

335.    Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make No-Fault payments as a result of the Count II Defendants' unlawful conduct described herein.

336.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count II Defendants are jointly and severally liable to Liberty Mutual, and Liberty Mutual is entitled to recover from each of the Count II Defendants three times the damages sustained by reason of the claims submitted by the DME Entity Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT III
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### MOTION AND COMPRESSION TECHNICIAN, LLC ENTERPRISE
**(Against Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC, Sean Martin, Naresh Mooklall, J&S Marketing Associates Inc. d/b/a S M Gateways, Crown Networking Group LLC, Jason Goldfarb, Mask Consulting Group Inc., Flaturf Consulting S Corp., and Ask Fercci LLC)**

337.    Liberty Mutual re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-312 as if set forth fully herein.

338.    In furtherance of their operation and management of Motion and Compression Technician, LLC ("Motion LLC"), Defendants, Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC, Sean Martin, Naresh Mooklall, J&S Marketing Associates Inc. d/b/a S M Gateways,

Crown Networking Group LLC, Jason Goldfarb, Mask Consulting Group Inc., Flaturf Consulting S Corp., and Ask Fercci LLC (collectively, "Count III Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Liberty Mutual insurance claims in furtherance of their scheme to defraud.

339.    The Count III Defendants employed two or more mailings to demand and/or receive payment from Liberty Mutual on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 1.

340.    Among other things, NF-3 forms, prescriptions, delivery receipts, wholesale invoices, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Liberty Mutual through the U.S. Mail.

341.    Policies of insurance were delivered to insureds through the U.S. Mail.

342.    Payments made by Liberty Mutual to Motion LLC were delivered through the U.S. Mail.

343.    As documented above, the Count III Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms to Liberty Mutual related to services that were purportedly performed by Motion LLC for the purpose of collecting payment from Liberty Mutual under the Personal Injury Protection benefits portion of the Liberty Mutual policies and applicable New York No-Fault laws.

344.    As a result of, and in reasonable reliance upon, the mailing and/or submission of these materially false representations, Liberty Mutual, by its agents and employees, issued drafts to Motion LLC, for the benefit of one or more of the Count III Defendants, that would not otherwise have been paid.

345.    The Count III Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents, each appearing legitimate on their face, also prevented Liberty Mutual from discovering this scheme for a long period of time, thus enabling the Count III Defendants to continue without being detected.

346.    The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

347.    By creating and then mailing to Liberty Mutual (or directing the creation and subsequent mailing to Liberty Mutual) of numerous fraudulent documents in an ongoing scheme, the Count III Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

348.    The activities alleged in this case had the direct effect of causing funds to be transferred from Liberty Mutual to Motion LLC for the benefit of the Count III Defendants.

349.    Liberty Mutual is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Liberty Mutual's overall financial well-being and adversely affect insurance rates.

350.    Motion LLC constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

351.    The Count III Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of the Motion LLC enterprise through a pattern of racketeering activities.

352.    Liberty Mutual is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count III Defendants' conduct.

353.    The Count III Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

354.    By virtue of the Count III Defendants' violations of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT IV
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### MOTION AND COMPRESSION TECHNICIAN, LLC ENTERPRISE
**(Against Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC, Sean Martin, Naresh Mooklall, J&S Marketing Associates Inc. d/b/a S M Gateways, Crown Networking Group LLC, Jason Goldfarb, Mask Consulting Group Inc., Flaturf Consulting S Corp., and Ask Fercci LLC)**

355.    Liberty Mutual re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-312 as if set forth fully herein.

356.    Throughout their participation in the operation and management of Motion and Compression Technician, LLC ("Motion LLC") Defendants, Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC, Sean Martin, Naresh Mooklall, J&S Marketing Associates Inc. d/b/a S M Gateways, Crown Networking Group LLC, Jason Goldfarb, Mask Consulting Group Inc., Flaturf Consulting S Corp., and Ask Fercci LLC (collectively, "Count IV Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

357.    The Count IV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Motion LLC by means of a pattern of racketeering activity, namely using the U.S. Mail to send fraudulent NF-3 bills and other claim-related documents to Liberty Mutual in connection with No-Fault claims, including, without limitation, the numerous instances of mail fraud set forth in Exhibit 1.

358.    The purpose of the conspiracy was to obtain No-Fault benefit payments from Liberty Mutual on behalf of Motion LLC, even though Motion LLC, as a result of the Count IV Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments. The Count IV Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

359.    Liberty Mutual has been injured in its business and property by reason of this conspiratorial conduct whereas Liberty Mutual has been induced to make No-Fault payments as a result of the Count IV Defendants' unlawful conduct described herein.

360.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count IV Defendants are jointly and severally liable to Liberty Mutual, and Liberty Mutual is entitled to recover from each of the Count IV Defendants three times the damages sustained by reason of the claims submitted by Motion LLC, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT V
### COMMON LAW FRAUD
**(Against All Defendants)**

361.    Liberty Mutual re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-312 as if set forth fully herein.

362.    The Defendants intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual, and also concealed material facts from Liberty Mutual during the course of this scheme and in the course of their submission of bills seeking payment for medical services under New York's No-Fault laws.

363.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (a) in every claim, the representation that the DME Entity Defendants were properly licensed and therefore eligible to seek and collect No-Fault benefit payments under Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12) even though the Defendants were in violation of state and local licensure law, and (b) in every claim, the representation that the Defendants were eligible to seek and collect No-Fault benefit payments directly from Liberty Mutual under Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12) for the durable medical equipment purportedly provided to Liberty Mutual claimants when, in fact, the DME Entity Defendants were not eligible to seek or collect No-Fault benefit payments for these services because they were medically unnecessary.

364.     Orthomotion's bills are fraudulent because the DME Entity Defendants violated state and local licensure law by (1) making material misrepresentations in Orthomotion's DCWP licensure application, rendering the license null and void; (2) billing for services not rendered; (3) engaging in an unlawful referral and illegal kickback scheme; (4) billing for unnecessary DME that was medically useless; and (5) billing excessive charges for DME.

365.     The Defendants intentionally made the above-described false and fraudulent statements, and purposely concealed material facts for the purpose of inducing Liberty Mutual to pay charges submitted by (or on behalf of) Orthomotion.

366.     Liberty Mutual reasonably relied, to its detriment, upon the Defendants' material misrepresentations.

367.     Liberty Mutual has been injured in its business and property by reason of the above-described conduct because Liberty Mutual has made No-Fault payments to Orthomotion totaling

in excess of $959,132.79 over in connection with No-Fault claims determined to be fraudulent as of the filing of this action.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

368.     Liberty Mutual re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-312 as if set forth fully herein.

369.     As detailed above, the Defendants have engaged in improper, unlawful, and unjust acts, all to the harm and detriment of Liberty Mutual.

370.     The Defendants have each been enriched at Liberty Mutual's expense through their receipt of payments made by Liberty Mutual in connection with No-Fault benefit claims submitted by (or on behalf of) Orthomotion.

371.     The payments received by the Defendants constituted a benefit that they willingly and voluntarily accepted despite their commission of improper, unlawful, and unjust acts in furtherance of this scheme. The Defendants' retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

372.     By reason of the improper, unlawful, and unjust conduct described throughout this Complaint, the Defendants have been unjustly enriched in an amount totaling in excess of $959,132.79, the exact amount to be determined at trial.

**COUNT VII**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC)**

373.     Liberty Mutual re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-312 as if set forth fully herein.

69

374.     Medical providers must adhere to all applicable New York statutes which grant the authority to provide medical services in New York to be eligible to collect assigned No-Fault benefits.

375.     In view of its billing for durable medical equipment (1) making material misrepresentations in Orthomotion's DCWP licensure application, rendering the license null and void; (2) billing for services not rendered; (3) engaging in an unlawful referral and illegal kickback scheme; (4) billing for unnecessary DME that was medically useless; and (5) billing excessive charges for DME, Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC ("Orthomotion") has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional medical services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus have no standing to seek or collect any No-Fault benefit payments from Liberty Mutual, including, but not limited to, No-Fault benefits that were assigned to Orthomotion by its patients.

376.     Orthomotion continues to submit assigned No-Fault claims to Liberty Mutual demanding payment, and other assigned No-Fault claims remain pending with Liberty Mutual.

377.     Orthomotion continues to challenge Liberty Mutual's prior claim denials.

378.     Orthomotion continues to commence litigation against Liberty Mutual seeking payment of No-Fault benefits allegedly due and owing.

379.     A justifiable controversy exists between Liberty Mutual and Orthomotion because Orthomotion rejects Liberty Mutual's ability to deny such claims.

380.     Liberty Mutual has no adequate remedy at law.

381.    Orthomotion will also continue collecting No-Fault payments from Liberty Mutual absent a declaration by this Court that their activities are unlawful, and that Liberty Mutual has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Orthomotion.

382.    Accordingly, Liberty Mutual requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that Orthomotion, at all relevant times, (a) was in violation of state and local licensure law (b) dispensed DME based upon forged and/or altered prescriptions; (c) billed for DME not dispensed to Liberty Mutual claimants and (d) billed for DME that was not medically necessary, and thus has no standing to collect payment on any assigned No-Fault claim.

## XI.    DEMAND FOR RELIEF

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### ORTHOMOTION REHAB DME, INC. F/K/A ORTHOMOTION DME, LLC ENTERPRISE
**(Against Sean Martin, Naresh Mooklall, Motion and Compression Technician, LLC, J&S Marketing Associates Inc. d/b/a S M Gateways, Crown Networking Group LLC, Jason Goldfarb, Mask Consulting Group Inc., Flaturf Consulting S Corp., and Ask Fercci LLC)**

(a)    AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b)    AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)    GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

**<u>COUNT II</u>**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**ORTHOMOTION REHAB DME, INC. F/K/A ORTHOMOTION DME, LLC ENTERPRISE**
**(Against Against Sean Martin, Naresh Mooklall, Motion and Compression Technician, LLC, J&S Marketing Associates Inc. d/b/a S M Gateways, Crown Networking Group LLC, Jason Goldfarb, Mask Consulting Group Inc., Flaturf Consulting S Corp., and Ask Fercci LLC)**

(a)   AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b)   AWARD Liberty Mutual treble damages, interests, costs and reasonable attorneys' fees;

(c)   GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

**<u>COUNT III</u>**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**MOTION AND COMPRESSION TECHNICIAN, LLC ENTERPRISE**
**(Against Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC, Sean Martin, Naresh Mooklall, J&S Marketing Associates Inc. d/b/a S M Gateways, Crown Networking Group LLC, Jason Goldfarb, Mask Consulting Group Inc., Flaturf Consulting S Corp., and Ask Fercci LLC)**

(a)   AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b)   AWARD Liberty Mutual treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)   GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT IV
## VIOLATIONS OF 18 U.S.C. § 1962(d)
## MOTION AND COMPRESSION TECHNICIAN, LLC ENTERPRISE
**(Against Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC, Sean Martin, Naresh Mooklall, J&S Marketing Associates Inc. d/b/a S M Gateways, Crown Networking Group LLC, Jason Goldfarb, Mask Consulting Group Inc., Flaturf Consulting S Corp., and Ask Fercci LLCrb)**

(a)   AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b)   AWARD Liberty Mutual treble damages, interests, costs and reasonable attorneys' fees;

(c)   GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT V
## COMMON LAW FRAUD
**(Against All Defendants)**

(a)   AWARD Liberty Mutual its actual damages in an amount to be determined at trial;

(b)   AWARD Liberty Mutual its costs, including, but not limited to, investigative costs incurred in the detection of Defendants' illegal conduct;

(c)   AWARD Liberty Mutual its costs in defending collection lawsuits and arbitrations filed by Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC seeking to collect payment in connection with false and fraudulent No-Fault claims; and

(d)   GRANT any other relief this Court deems just.

## COUNT VI
## UNJUST ENRICHMENT
**(Against All Defendants)**

(a)   AWARD Liberty Mutual's actual and consequential damages to be determined at trial; and

(b)   GRANT any other relief this Court deems just.

## <u>COUNT VII</u>
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
## (Against Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC)

(a)     DECLARE that Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC, at all relevant times, have been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for DME in New York;

(b)     DECLARE that Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC's activities are unlawful;

(c)     DECLARE that Liberty Mutual has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Orthomotion Rehab DME, Inc. f/k/a Orthomotion DME, LLC; and

(d)     GRANT all other relief this Court deems just and appropriate.


## <u>JURY TRIAL DEMAND</u>

The plaintiffs demand a trial by jury on all claims.

KING, TILDEN, MCETTRICK & BRINK, P.C.

*/s/ Shauna L. Sullivan*

_____
Nathan A. Tilden (NT0571)
ntilden@ktmpc.com
Shauna L. Sullivan (SS5624)
ssullivan@ktmpc.com
350 Granite St, Ste 2204
Braintree, MA 02184
(617) 770-2214

Attorneys for the Plaintiffs,
*LM General Insurance Company,*
*LM Insurance Corporation,*
*Liberty Mutual Fire Insurance Company,*
*Liberty Mutual Personal Insurance Company,*
*American States Insurance Company,*
*General Insurance Company of America,*
*Peerless Indemnity Insurance Company,*
*Safeco Insurance Company of Illinois, and*
*Wausau Underwriters Insurance Company*

Dated: August 22, 2024